**HERMANIES, Plaintiff-Appellee, v. STANDARD OIL COMPANY, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

Nos. 7976-7978.   Decided April 12, 1955.

108

Hoover, Beall, Whitman & Eichel, Augustus Beall, Jr., John Hermanies, Cincinnati, for plaintiff-appellee.

John A. Benjamin, Cincinnati, McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, H. Vincent E. Mitchell, Cleveland, for defendant-appellant.

## OPINION

By MATTHEWS, J.

This action arose out of a collision between the plaintiff's passenger automobile and the defendant's truck in the intersection of Kugler's Mill Road and Miami Road.

The plaintiff in her petition alleged that on October 2nd, 1951, she was operating her Studebaker automobile in a northerly direction over and along Miami Road in Sycamore Township in Hamilton County, Ohio, approaching the intersection of Miami Road with Kugler's Mill Road (sometimes called Galbraith Road) which is a road running approximately in an east-west direction as it intersects Miami Road, and that her rate of speed did not exceed twenty-five miles per hour.

The plaintiff also alleged that on the same day the defendant "through Chester Petrie, its agent and employee who was then and there working within the scope of his employment, was operating a Sohio Gasoline truck over and along Galbraith Road aforesaid in an easterly direction" and that while plaintiff was proceeding through the intersection of said roads "the defendant suddenly and without warning, without stopping before entering the intersection, aforesaid, drove said truck with great force into the front of plaintiff's car striking same with the right front side of defendant's truck causing injuries to the plaintiff."

The negligence charged against defendant consisted in disregarding an authorized stop sign, in operating the truck in disregard of traffic conditions, without keeping a proper lookout, failing to keep the truck under proper control, in exceeding a rate of speed that was reasonable and proper, and without due regard for the safety of others.

The plaintiff set forth her physical injuries and suffering, the expense incident thereto and the damage to her automobile, totaling $68,044.83, for which she prayed judgment.

By way of amended answer the defendant admitted its corporate

existence, that Galbraith Road and Miami Road existed as described and that on October 2nd, 1951, "a collision occurred between an automobile driven by Lucia E. Hermanies and defendant's truck operated by Chester Petrie at the intersection of Miami and Galbraith Roads." These admissions were followed by the allegation that "Defendant denies each and every other allegation of plaintiff's petition, not hereinbefore admitted to be true, and specifically denies that the truck driven by Chester Petrie entered said intersection suddenly and without stopping. Defendant further specifically denies that plaintiff was injured to the extent and suffered damages in the amount claimed in her petition."

The defendant by cross-petition sought judgment against the plaintiff for the damage to its truck on the ground that said damage was caused "solely, directly and proximately by the plaintiff's negligence."

The action went to trial on these pleadings.

In the rather lengthy opening statement of defendant's counsel, he went into considerable detail as to the testimony of certain witnesses, particularly the testimony of Petrie, and in explanation of his ability to do so, said that Petrie's deposition had been taken and that he would "testify in court as part of the defendant's case." He then proceeded to state what Petrie and his companion, whose deposition had also been taken, would testify to. He said: "The truck went into a dip, and the driver Petrie, because he was aware of the fact that this was an intersection where the vision was poor, he had discussed this matter with other drivers in the drivers' room at The Standard Oil Company plant; and he had also been over the route previously" etc. There was no indication in the opening statement that the defendant disputed that defendant's truck was being operated at the time in and about the defendant's business by its agent or employee.

The trial proceeded and the plaintiff rested her case without offering any evidence on the averment that Petrie was acting for and on behalf of the defendant in the operation of the truck at the time.

No motion for judgment or for an instructed verdict was made at that time; nor was the attention of the court called to any failure of the plaintiff to offer evidence upon all the elements of her case.

Thereupon, the defendant proceeded with its defense. It offered the testimony of three physicians and rested without placing Petrie upon the stand, notwithstanding the statement of its counsel in his opening statement that he would take the stand as a part of defendant's case.

The plaintiff offered no rebuttal evidence.

The defendant made no motion for judgment or an instructed verdict at this time; nor in any way indicated to the court that there was no issue to be submitted to the jury. On the contrary, the defendant proceeded to request that certain special charges in writing be given before argument, and, after they were disposed of, its counsel proceeded in his turn to argue the case to the jury. In his argument defendant's counsel made no reference whatever to the absence of evidence of Petrie's authority to represent the defendant in the operation of its truck. The court did not submit in any way the authority of Petrie as an issue in the case. Nor did it in any way instruct the jury as to the law applicable to any such issue.

The jury returned a verdict for $25,000.00. On the same day, the defendant filed a motion for judgment notwithstanding the verdict. Three grounds were alleged. The first one was that "The record does not contain any evidence of negligence on the part of the defendant, The Standard Oil Company" and it is under that broad panoply that the defendant now seeks to reverse the judgment for the plaintiff and have the court enter final judgment in its favor on the narrow ground that the authority of Petrie was not proven.

On overruling the defendant's motion for judgment, the court entered judgment for the plaintiff for $25,000.00. Thereafter, in due time the defendant moved for a new trial, on overruling which the court ordered a remittitur of $7600.00, which the plaintiff accepted. Both parties excepted to this order and the plaintiff seeks to have the court vacate the remittitur and restore the amount remitted. We are of the opinion, however, that the plaintiff having consented to the remittitur and induced the court thereby to enter the judgment is in no position to attack the judgment. If any error was committed, she invited it.

We have set forth excerpts from the pleadings and the outline of the trial because the defendant's counsel have urged most strongly that this judgment must be reversed and final judgment rendered for it, for the reason that there was imbedded in its answer a general denial among certain specific denials, and that this general denial placed Petrie's authority in issue, and that there is a failure of proof on the subject, and, as the plaintiff had the burden of proving it, she must fail, and final judgment entered for the defendant. The belated filing of this motion surely cannot have the effect claimed for it. In view of the fact that this motion was filed immediately after the jury had been discharged, we think it is a fair assumption that the defendant had concluded sometime prior thereto that this alleged failure of proof existed. Indeed, there is an obscure reference in counsel's final argument that might be attributed to such knowledge. In **39 O. Jur.**, at **860** and **861**, we find this statemnt of the law relating to the discretion of the court to permit a case to be opened for introduction of additional evidence:

"In general, it is within the sound discretion of the trial judge to permit the plaintiff to reopen the case and introduce further evidence after he has once rested his case, and undoubtedly the trial judge may, in the interests of justice, allow the party against whom, at the conclusion of his evidence, is directed a motion for an involuntary non-suit on the merits or to direct a verdict in favor of the moving party, to reopen his case and supplement it with additional proof when such evidence, or want thereof, must control the court's ruling on a motion for a directed verdict, particularly if he has inadvertently omitted proof of some material fact, and even though he has negligently omitted to prove some essential fact. In fact, in such cases it is quite a matter of course to permit the plaintiff to reopen his case and supply missing links in his evidence, and it may be held to be an abuse of discretion to deny a party the opportunity to offer evidence to prove a fact and at the same time to direct a verdict against him for failure to prove such fact, * * *"

By withholding the filing of this motion for judgment until after

the trial had been concluded and the jury discharged the defendant would, if effect were given to it, completely deprive the plaintiff of her right to appeal to the discretion of the court to permit her to re-open her case to supply the omitted evidence. That such an appeal would have been favorably considered can hardly be doubted.

This contention of counsel presents for determination the question of whether under the pleadings, as interpreted by defendant's conduct, the authority of Petrie to represent the defendant was an issue of fact.

The effect of the inclusion of a general denial with specific denials in an answer has been the subject of discussion and decision by many courts of "Code" states. As would naturally be expected most, but not all, of these decisions are found to be by nisi prius courts. Many states' have provisions identical with §2309.13 R. C. (§11314 GC), by which it is enacted that "An answer shall contain: (A) A general or specific denial of each material allegation of the petition controverted by the defendant."

It will be observed that the section provides that the answer may contain either a general or special denial, but does not provide that it may contain both. This is noticed in 31 O. Jur., 748, where it is stated: "It will be observed that the provision of the statute is that the denial must be a general 'or' a specific denial. The denial cannot be made at the same time general and specific, or be construed to be one or the other as may be claimed by the pleader."

Under the heading "Answers In Code Pleading," it is said in 1 Encyclopedia of Pleading and Practice, 785, that: "The pleader may always elect to specifically deny all the material allegations of the complaint, instead of using the general denial. But the use of a specific denial precludes a general denial. Specific and general denials in the same answer are improper."

The case of Philip Schneider Brewing Co. v. American Ice Machine Co., 77 Fed., 138, involved the effect of the inclusion of specific denials upon a general denial in the same answer. The court held, as stated in the second paragraph of the syllabus that "Under section 56 of the Code of Colorado, the answer is required to contain a general or specific denial of each material allegation in the complaint intended to be controverted, and if it contains both a general and a specific denial, the general denial raises no issue outside of the specific denial."

According to 31 O. Jur., 767, the Ohio rule is in accord. It is said there that: "If a general denial in an answer is coupled with a specific denial, the general denial is limited and restricted to such particulars as are pointed out in the specific denial."

It seems clear from the authorities that under codes of civil procedure similar to the Ohio Code, the combining of a general and a specific denial is unauthorized. The cases do not seem to be in entire accord as to the effect of such joinder. In many cases—perhaps the majority—the rule is that the general denial will be disregarded and the traverse limited to the particulars covered by the specific denial. In some cases the defendant has been put to an election, and, when made, held bound by the election. School District v. Holmes, 16 Neb. 486; Dennison v. Dennison, 9 How. (N. Y.) 246; and Reed v. Hoyt, 51 N. Y. Super. Ct., 121.

We are of the opinion that where a defendant could be compelled to elect, he may voluntarily elect. And we are of the opinion that the defendant did elect to rely on its specific denials, and, for the further reason, that in the absence of an election a general denial must be limited to the particulars covered by the special denial in the same answer with which it is coupled, we find that the court did not err in concluding that the authority of Petrie was not put in issue, and in not submitting such an issue to the jury.

The defendant-appellant also urges that the court erred in refusing to give a special charge requested by it, and also erred in not submitting the issue of contributory negligence to the jury. If there was no substantial evidence of contributory negligence, the court was right in not submitting such an issue to the jury, and, of course, was right in refusing the special charge on the subject. And we have concluded that there is no substantial evidence of contributory negligence shown by the record.

As we view this record, it shows a collision between defendant's truck and plaintiff's automobile in an intersection through which the plaintiff had the right of way because the defendant was approaching from the left. There is not a particle of evidence that she had forfeited this right of way. There is no contradiction that the collision occurred in plaintiff's lane of travel, which could only have taken place because defendant entered that lane of travel. The evidence is undisputed that the defendant suddenly and without warning entered this lane of travel over which plaintiff had priority, and that plaintiff had neither time nor opportunity to avoid the collision after she became aware of the presence of the defendant's truck, and that its operator did not intend to yield the right of way to her.

Of the many cases cited and commented on by the defendant, we take notice of only one, and that is a case decided by this Court. It is the case of **Schaffer v. Cincinnati Street Railway Company, 75 Oh Ap 288.** The facts in that case were in marked contrast to the facts in the case at bar. In that case the defendant—not the plaintiff, as in this case—had the right of way and everything that was said in that case must be interpreted in the light of that fact. Nothing that was said in that case is inconsistent with our decision in this case.

Counsel also urges that the judgment is excessive. The court directed a remittitur, which plaintiff accepted, reducing the amount to $17,400.00. We do not believe we would be justified in disturbing this judgment on the ground that the amount is excessive.

No other error was urged upon the court by brief or oral argument. We find no prejudicial error in the record.

For these reasons, the judgment is affirmed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur.