DOLLY A. SMITH ET AL., EXECUTORS, V. HARRIET A.
PERRY ET AL.

FILED DECEMBER 9, 1897. No. 7633.

1. **Witnesses:** INTEREST IN SUIT: TRANSACTIONS WITH DECEASED PER-
SON. One who has a direct legal interest in the result of an action
in which the adverse party is the representative of a deceased per-
son is not a competent witness therein except as provided by stat-
ute. Liability for costs in the suit is a direct legal interest.
(*Wylie v. Charlton*, 43 Neb., 840; *Taylor v. Ainsworth*, 49 Neb., 696.)

2. ———: ———: ———. The word "transaction," as used in section
329 of the Code of Civil Procedure, embraces every variety of
affairs the subject of negotiations, actions, or contracts between
parties. (*Kroh v. Heins*, 48 Neb., 691.)

3. ———: ———: ———: LETTERS. Copies of letters and letters which
passed between parties in the course of a business transaction, and
which contain the contract, the result of the negotiations, not oth-
erwise identified than by a witness who has a direct legal interest
in the result of the suit, are incompetent as evidence in an action
arising from the subject-matter of such contract, if one of the
parties to such contract has deceased and one of the adverse
parties to the action is the personal representative of the deceased.

4. **Review:** TRIAL TO COURT: ADMISSION OF INCOMPETENT EVIDENCE.
In an equity case removed to this court by petition in error to se-
cure a review of the proceedings during a trial in the district court
without a jury, in which it is complained that the findings and the
decree based thereon are not sustained by sufficient competent evi-
dence, it will be assumed that the trial court considered only com-
petent evidence in the determination of the issues; and this court
will consider none but the competent evidence in the record, and
disregard that which is incompetent, and this regardless of
whether the views of this court relative to the competency of any
of the evidence apparently conflict with the view which was enter-
tained by the trial court in regard to such evidence. If, so treated,
the record does not contain sufficient competent evidence to sup-
port the findings and the decree, the decree will be reversed.

5. **Equity:** TRIAL OF ISSUES. The issues in equity causes are as a rule
triable to the court without a jury. (Code, sec. 281.)

ERROR from the district court of Buffalo county. Tried below before SINCLAIR, J.  *Reversed.*

*Marston & Nevius,* for plaintiffs in error.

*Wharton & Baird* and *Dryden & Main, contra.*

HARRISON, J.

It appears herein that on February 12, 1889, Harriet A Perry and S. F. Perry, of defendants in this action, executed and delivered to Fred Y. Robertson, also of defendants, four promissory notes, three in the sum of $1,000 each and one in the sum of $3,500, and to secure the payment of the $1,000 notes and the interest executed and delivered to the payee thereof a mortgage on certain real property in the city of Kearney, Nebraska, and at the same time and place executed and delivered to Fred Y. Robertson a mortgage on the same property to secure the payment of the $3,500 note and its interest. Both mortgages were filed for record on the one date and at the one time. The note for $3,500 and its accompanying mortgage were sold and delivered to Sarah J. Barry, of defendants in the action, and two of the $1,000 notes and the mortgage securing their payment were sold and assigned to Leander Smith, who subsequently died, and the plaintiffs were duly appointed his executors. The payment of each note was by an indorsement on the back guarantied by the payee, Fred Y. Robertson. It was alleged in the petition in the action, as a part of the cause as against Fred Y. Robertson, that subsequent to the sale of the two $1,000 notes and the mortgage given to secure their payment he had instituted an action of foreclosure of the mortgage, and secured a decree to be entered therein, by which such mortgage was declared a first lien on the property described therein; that he afterwards, in a purposed sale of the property under the decree, procured a fraudulent appraisal thereof to be

made, by which it was shown that there was a prior incumbrance of the property in the sum of $3,970; that such was not the fact, and that Fred Y. Robertson, at the time he commenced and prosecuted said action, was not the owner or interested in the two $1,000 notes, the payment of which was secured by the mortgage, or of the mortgage of which a decree of foreclosure was therein obtained. It was also pleaded that he was not in any manner authorized to bring the suit. It was prayed in the case at bar that the decree in the suit prosecuted by Fred Y. Robertson be set aside or modified to conform to the facts, and the appraisement of the property be canceled. The further portions of the prayer need not be noticed here. In the case at bar findings were made and reduced to writing and appear with the decree in the record. The mortgage given to secure the payment of the note of $3,500 was by the decree accorded priority over the one declared upon by the plaintiffs in the action, and they have removed the cause to this court for review.

During the progress of the trial Fred Y. Robertson was called as a witness, and, over the objections of the plaintiffs generally that the evidence was immaterial, irrelevant, and incompetent, gave evidence by which copies of letters written by him to Leander Smith, whom the plaintiffs represented as executors, were identified, such letters containing a proposition to sell to Leander Smith the two notes for $1,000 each and the accompanying mortgage, also information relative to the position of the mortgage as an incumbrance, or lien, etc.; also identified some letters in his possession as received from the other party to the negotiations, the entire correspondence constituting the transaction by which the sale of the notes and mortgage was effectuated. When the copies and letters were offered in evidence the counsel for plaintiffs interposed the same general objection, coupled with the specific one that the witness was "a party in interest and called to testify to a transaction with a deceased person,

in an action by executors as personal representatives."
This was overruled. The complaint of plaintiffs now is
that there was not sufficient competent evidence to sup-
port the finding and decree in its assignment of the
mortgages relative to the question of priority as liens
on the property involved; that the evidence of Fred Y.
Robertson, and the copies of letters identified thereby,
were all the evidence bearing on this point, and it was
incompetent, and should have been discarded and disre-
garded by the trial court. The trial was, of course, to
the court without a jury.

The question presented is whether the witness had a
direct legal interest in the result of the action, or was the
evidence within the prohibition of section 329 of the
Code, which is as follows: "No person having a direct
legal interest in the result of any civil action or proceed-
ing, when the adverse party is the representative of a de-
ceased person, shall be permitted to testify to any trans-
action or conversation had between the deceased person
and the witness unless the evidence of the deceased
person shall have been taken and read in evidence by the
adverse party in regard to such transaction or conversa-
tion, or unless such representative shall have introduced
a witness who shall have testified in regard to such
transaction or conversation, in which case the person
having such direct legal interest may be examined in
regard to the facts testified to by such deceased person
or such witness, but shall not be permitted to further
testify in regard to such transaction or conversation."

The first point for discussion in the determination of
the foregoing question hinges on the legal interest, or
lack of legal interest, of the witness, in the result of the
action. In the body of the opinion in the case, *Wamsley
v. Crook*, 3 Neb., 344, it was said by this court with refer-
ence to section 329 of the Code: "The language of the
statute is imperative. If a person has a direct legal
interest in the result of the cause, when the adverse
party is the legal representative of the deceased, he shall

not be a competent witness. Whatever may be the ground of his claim, he is excluded as a witness in the case; hence the court did not err in sustaining the motion to suppress the testimony of defendants." And in *Ransom v. Schmela,* 13 Neb., 73, it was decided that "One who has a direct legal interest in the result of a cause in which the adverse party is administrator of a deceased person, is not a competent witness therein. Liability for the costs of the action is such an interest;" and further stated: "As to the witness Herman, the exclusion of whose testimony is assigned for error, he was clearly incompetent. He was the original party defendant, and, notwithstanding his disclaimer, was interested at least to the extent of the costs that might be adjudged against him. In the language of the statute, he had a direct legal right in the result of the cause, and the adverse party was an administrator of a deceased person." The witness Fred Y. Robertson was interested in the result of the present action, at least to the extent of the costs for which judgment might be rendered against him, and by an application of the rule announced in *Ransom v. Schmela, supra,* was incompetent to testify in this case relative to any of the matters within the prohibition of the section of the Code we have quoted.

Of the findings of the trial court were the following: "(3.) That afterwards the said defendant F. Y. Robertson sold, assigned, and delivered each of the $1,000 bonds, with coupons attached, with the mortgage securing the same, to the said Leander Smith, the plaintiff's decedent, and guarantied the payment of the said bonds by his written indorsement thereon, and sold, assigned, and delivered the said bond for $3,500, with the mortgage securing it, to the cross-petitioner Sarah J. Barry. (4.) That from the oral testimony and evidence in the case it appears that the said defendant F. Y. Robertson sold, and the plaintiffs' decedent took, the said mortgage securing the said three one thousand dollar bonds as a second and junior mortgage upon the premises therein

Smith v. Perry.

described, to the said mortgage securing the said thirty-five hundred dollar bond assigned to the cross-petitioner Sarah J. Barry, to which finding of the court the plaintiffs except and their exceptions are allowed." The decree ordered payment of the sums adjudged due on the notes and mortgages and, in case of failure thereof, a sale of the property, the proceeds, after payment of certain costs, to be applied in payment of the mortgages in the order of priority indicated in the findings of the decree. The matter of the copies of letters and letters introduced in evidence was of the terms, etc., of the transaction of sale of the notes and mortgage to Leander Smith, and furnished the only evidence in the record in support of the finding of the trial court in relation to the rank of the mortgages as liens. That letters in which an agreement of the nature of the one in question in this case come within the definition of the term "transaction" as used in section 329 of the Code, see *Kroh v. Heins*, 48 Neb., 691. The copies and letters were not competent until properly identified, and, as we have seen, the witness who identified them was incompetent to testify, or disqualified; and his evidence could not be received, or if received, could have no effect in the determination of the issues.

This is an equity case and the issues subject to trial by the court. (See sections 279-281, Code of Civil Procedure.) "Where incompetent testimony is given on the trial of an equity case this court, in reviewing such case on an appeal, will presume that such testimony was not considered by the district court." (*Buckingham v. Roar*, 45 Neb., 244.) "Where the trial is by the court acting without a jury, it will be presumed on appeal to have acted only on the legal testimony adduced." (2 Ency. Pl. & Pr., 474.) In the opinion in the case of *Willard v. Foster*, 24 Neb., 213, it was observed: "The cause was tried to the court without the intervention of a jury. In causes thus tried, it has been often held by this as well as other courts that error for the admission of im-

proper evidence would not lie. The court must necessarily have an opportunity to examine each article of evidence offered, even for the purpose of rejecting it; and so the duty of acting and deciding the cause, upon the legal and relevant evidence selected from the mass that may have been introduced, may be as well discharged by the court upon the final consideration of the cause, as to pause in the course of the trial to pass upon the admissibility of the several matters offered in evidence." "In trials of fact without the aid of a jury the question of the admissibility of evidence, strictly speaking, can seldom be raised; since whatever be the ground of objection the evidence objected to must, of necessity, be read or heard by the judge, in order to determine its character and value." (1 Greenleaf, Evidence, sec. 49.)

We are required to assume that the trial judge rejected all incompetent evidence and allowed and gave weight to none but competent evidence on the final hearing, or in the consideration and determination of the issues. It follows that we must consider only competent evidence and disregard that which is incompetent, and, if there is sufficient competent evidence in the record to support the finding and decree, affirm it; if not, reverse it; and this regardless of whether our views relative to the competency of any of the evidence apparently agrees or disagrees with the view of the trial court as to the competency of the evidence at the hearing in the district court. We have determined that the portions of the evidence under discussion were incompetent as herein introduced and as, with these thus eliminated from the record, the finding and resultant decree are not sustained by the evidence, the decree must be reversed.

It is argued by the counsel for plaintiffs that if the decree is reversed, inasmuch as the mortgages were executed and also recorded simultaneously, and the question of priority of lien is one of the intention of the parties, usually expressed in some agreement, written or verbal, the record in this case disclosing no indications of the

intention, we must be governed by the facts that the mortgage given to secure the $3,500 note had a longer time to run,—it was due in five years from date,—than the other, the three notes whose payments were secured by it being due respectively in one, two, and three years after date, and presume that the latter, being made to mature the sooner, was intended to be the prior lien; and asks us to give ear to this view and render a decree here in accordance therewith. We do not think these facts afford the true, or any index to the, intention of the parties in regard to the priority of either of the liens; hence must decline to follow the view advanced, or give it force. We deem it proper that the cause be returned to the lower court for further proceedings.

REVERSED AND REMANDED.